FILED
COURT OF APPEALS
DIVISION II

2015 MAR 10 AM 8: 37

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GUY H. WUTHRICH, | No. 44019-9-II |
| Appellant, | |
| v. | |
| KING COUNTY, a governmental entity, | UNPUBLISHED OPINION |
| Respondent, | |
| CHRISTA GILLAND (PRICE), | |
| Defendant. | |

JOHANSON, C.J. — In 2008, Guy Wuthrich suffered injuries in a motor vehicle collision with Christa Gilland. After Wuthrich sued both Gilland and King County (County) for negligence, the trial court granted summary judgment in the County's favor, dismissing it from the suit. Wuthrich now appeals. We hold that summary judgment was proper because there is no genuine issue of any material fact regarding the County's breach of its duty to exercise ordinary care to build and maintain its roadways in a reasonably safe manner for ordinary travel. We affirm summary judgment in the County's favor.

## FACTS

### BACKGROUND AND PROCEDURE

On June 20, 2008, Gilland drove on 159th Street near Woodinville in King County. She stopped at the stop line where 159th Street intersects with Avondale Road. Upon stopping, Gilland looked left and right to scan for traffic on Avondale Road. Gilland saw no oncoming cars and turned left onto Avondale. Unfortunately, Gilland's turn took her into Wuthrich's path, resulting in a collision. Large brush contributed to Gilland's obstructed view of approaching traffic.

Wuthrich sued both Gilland and the County for negligence. The claim against the County alleged that the County had "fail[ed] to design, maintain and operate" the intersection where the accident occurred "in a reasonably safe condition, with adequate sight distance for motorists using the roadway."[1] Clerk's Papers (CP) at 3. The suit alleged that both Gilland's and the County's negligence had proximately caused the accident.

The County answered by denying that it had breached any duty or that it was a proximate cause of Wuthrich's accident and moved for summary judgment on both issues.[2] In opposition to summary judgment, Wuthrich offered Gilland's statement given approximately an hour after the accident.[3] In that statement, Gilland said that just before the accident, she had stopped "at the stop

---

[1] Wuthrich's negligence claim against Gilland alleged that she had failed to yield the right of way to him.

[2] The trial court also denied two of Wuthrich's summary judgment motions, but our review is only of the County's motion because it resulted in a final judgment triggering an appeal as a matter of right. RAP 2.2(a)(1).

[3] Because our review is of an order of summary judgment, the evidence is described in the light most favorable to Wuthrich, the nonmoving party.

line looking for traffic." CP at 432. Gilland then said that she began turning onto Avondale and saw Wuthrich just before the accident.

Wuthrich also offered the investigating officer's accident report. In his report, the officer wrote that

> [o]n the northwest corner of the intersection there is a large brush line that runs from the corner northbound along the west side of Avondale Rd[.] NE. This brush line causes somewhat of a site [sic] obstruction from vehicles stopped eastbound NE 159th St[.] at the stop bar looking north on Avondale Rd[.] NE. There is also a power light pole on the northwest corner of the intersection. However, if you move forward (east) to the intersection, the line of sight improves.

CP at 445. Based on his investigation, the officer concluded that "Wuthrich was approaching the intersection . . . when Christa Gilland started her turn from the area of the stop bar." CP at 450.

Further, in opposition to summary judgment, Wuthrich offered his own and Gilland's deposition testimony. In his deposition, Wuthrich stated that he was travelling down Avondale and did not see Gilland's car until seeing its bumper approximately a second before the accident. In Gilland's deposition, she again stated that she did not see Wuthrich until just before the collision. Gilland also repeatedly testified that she believed that she did not see Wuthrich because of the brush line and telephone pole.[4] When asked what she thought had caused the accident, Gilland testified that "[i]t's my best of my [sic] recollection of the events, there had to have been an outside source why I didn't see him. And the two things that are there are the pole and the bushes." CP at 427.

---

[4] The "brush line" refers to the bushes near the northwest corner of the intersection of NE 159th Street and Avondale Road in Woodinville. Photographs of the brush line are in the declaration of Detective James Leach, the lead investigator of this collision.

3

Wuthrich's accident reconstruction expert, Paul Olson, opined that depending on where Gilland actually stopped, "the sight line for drivers pulling up to this intersection was obstructed." CP at 439. Given that potential obstruction, Olson opined that it was possible that "'[w]hen [Gilland's] car began its acceleration, Mr. Wuthrich was too close and had too little time to be able to avoid this collision.'" CP at 438. Olson testified, although he could not say exactly what happened without knowing where exactly Gilland stopped, that Wuthrich's and Gilland's deposition testimony about their inability to see each other until just before the accident was consistent with Wuthrich's theory that Gilland began her turn from the stop line and that the brush line could have obstructed her view of Wuthrich from that point.

Wuthrich's transportation engineering expert, Edward Stevens, opined that the brush line at the intersection "obstructed drivers' view of traffic conditions on Avondale Road and 159th Street at the intersection." CP at 1265. Stevens also opined that the "sight obstructions" created by the brush line "created an inherently dangerous condition at the intersection" that prevented stopped drivers from seeing oncoming traffic in time to avoid a collision. CP at 1265. Stevens agreed that the County did not need to remove the brush line to create a safe intersection, but opined that it needed to take other corrective measures like reducing the speed limit to allow drivers time to react to possible collisions. Stevens also claimed that the County had not complied with the necessary sight distances required by various design manuals because of the way that it had used the stop line.

The trial court granted the County's summary judgment motion, concluding that "King County did not breach its duty of care and . . . King County was not a proximate cause of

4

[Wuthrich's] injuries." CP at 1280. The trial court stayed the action against Gilland, and this appeal followed.

ANALYSIS

Wuthrich contends that the trial court erred when it decided that the County had not breached its duty of care and was not a proximate cause of his accident as a matter of law. We disagree with Wuthrich and affirm summary judgment in the County's favor.

We review de novo a trial court's order granting summary judgment, performing the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). Summary judgment is appropriate where "'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Lowman v. Wilbur*, 178 Wn.2d 165, 168-69, 309 P.3d 387 (2013) (internal quotation marks omitted) (alteration in original) (quoting *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 795, 64 P.3d 22 (2003)). A material fact is one which affects the outcome of the litigation. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 861, 93 P.3d 108 (2004). To determine if a genuine issue of fact exists, we view all the evidence and draw all reasonable inferences in the light most favorable to Wuthrich as the nonmoving party. *Lakey*, 176 Wn.2d at 922.

A successful negligence action requires the plaintiff to prove four elements: "'(1) the existence of a duty [owed] to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'" *Lowman*, 178 Wn.2d at 169 (quoting *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). Wuthrich's appeal concerns whether a genuine issue of material fact exists regarding whether the County breached a duty to him to either (1) eliminate inherently dangerous conditions on the roadways or (2) exercise ordinary care to

build and maintain its roadways in a reasonably safe manner for ordinary travel. Because our review is de novo, we do not concern ourselves with the reasons for the trial court's ruling. Instead, we look to the record as a whole to determine whether material facts are in genuine dispute and, if not, whether the County is entitled to summary judgment as a matter of law.

## I. BREACH

Wuthrich argues that summary judgment was inappropriate because material issues of fact remain as to whether an inherently dangerous condition existed at the intersection where the accident occurred or whether the intersection was reasonably safe for ordinary travel under the totality of the circumstances.[5] We disagree and hold that the brush line here is not an inherently dangerous condition because under our Supreme Court precedent, such a condition must exist in the roadway itself. We also hold that the County did not breach its duty to "build and maintain its roadways in a reasonably safe manner" that is reasonably safe for ordinary travel. *Keller v. City of Spokane*, 146 Wn.2d 237, 252, 44 P.3d 845 (2002).

Because the legislature has waived sovereign immunity for municipalities, "municipalities are generally held to the same negligence standards as private parties."[6] *Keller*, 146 Wn.2d at 242-43. Municipalities are, therefore, "held to a general duty of care, that of a 'reasonable person under

---

[5] Wuthrich also argues that the trial court applied the incorrect standard when it relied on *Ruff v. County of King*, 125 Wn.2d 697, 887 P.2d 886 (1995), and not *Keller v. City of Spokane*, 146 Wn.2d 237, 44 P.3d 845 (2002). Even granting that this was error, our review of a trial court's decision on a summary judgment motion is de novo and we, therefore, address Wuthrich's theories of liability as he raises them. *Lakey*, 176 Wn.2d at 922.

[6] The word "municipality" "broadly includes a city, town, county, or the state." 16A DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 18:17, at 93 (4th ed. 2013).

the circumstances.'" *Keller*, 146 Wn.2d at 243 (quoting DAN B. DOBBS, THE LAW OF TORTS, § 228, at 580 (2000)). This duty of care requires a municipality to "exercise ordinary care to build and maintain its roadways in a reasonably safe manner for the foreseeable acts of those using the roadways." *Keller*, 146 Wn.2d at 252 (citing *Berglund v. Spokane County*, 4 Wn.2d 309, 319-21, 103 P.2d 355 (1940)). The "overarching duty to provide reasonably safe road[ways]" also includes a duty to "eliminate an inherently dangerous or misleading condition." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 788, 108 P.3d 1220 (2005). The duty to eliminate inherently dangerous conditions is only a specific aspect of a municipality's general duty of care and a plaintiff may show a municipality has breached its duty without showing a failure to eliminate an inherently dangerous condition. *Xiao Ping Chen v. City of Seattle*, 153 Wn. App. 890, 909, 223 P.3d 1230 (2009), *review denied*, 169 Wn.2d 1003 (2010). These two independent duties are the bases of Wuthrich's claim against the County. However, both are unpersuasive.

## A. THE BRUSH LINE DID NOT CREATE AN INHERENTLY DANGEROUS CONDITION

Wuthrich's contention that the County's failure to maintain the brush line at the intersection created an inherently dangerous condition is meritless based on Supreme Court precedent. An inherently dangerous condition is one that exists in the roadway itself. *Barton v. King County*, 18 Wn.2d 573, 576-77, 139 P.2d 1019 (1943) (quoting *Leber v. King County*, 69 Wash. 134, 136-37, 124 P. 397 (1912)). Moreover, "where a road itself is reasonably safe for public travel, it is not rendered inherently dangerous to travelers exercising reasonable care, solely because a municipality fails to remove vegetation located off of the road, which tends to obstruct the view." *Rathbun v. Stevens County*, 46 Wn.2d 352, 356, 281 P.2d 853 (1955); *see also Bradshaw v. City*

7

*of Seattle*, 43 Wn.2d 766, 773-75, 264 P.2d 265 (1953); *Barton*, 18 Wn.2d at 576-78.[7] Here, to defeat summary judgment, Wuthrich relied on Stevens's declaration and Olson's deposition testimony. However, they both stated that only the brush line, rather than a defect in the road, created the inherently dangerous condition. Based on *Barton, Rathbun*, and their progeny, any visibility problems that the brush line may have created are irrelevant to this theory of breach, and summary judgment was proper.

B. THE COUNTY EXERCISED ORDINARY CARE TO BUILD AND MAINTAIN ITS ROADWAYS

Likewise, Wuthrich's contention that the County failed to build and maintain the intersection so that it was reasonably safe for ordinary travel is also not viable. While Wuthrich cannot show an inherently dangerous condition because of *Barton* and subsequent cases, he did not need to do so if, instead, a triable question of fact exists as to whether the County failed to build and maintain the intersection in a reasonably safe manner for ordinary travel given the totality of the circumstances. *Xiao Ping Chen*, 153 Wn. App. at 909-11.

In the light most favorable to him, Wuthrich's evidence established that Gilland stopped at the stop line, that the brush line obstructed the view of traffic on Avondale from the stop line, and that the County failed to remedy the danger created by the brush line through other measures, such

---

[7] Wuthrich responded to the County's citation to these cases by claiming that the County was raising issues properly addressed in review of a different summary judgment order, one related to the County's duty as a landowner. Wuthrich is incorrect that the County raises arguments not specifically relevant to his appeal. The County cited these cases as legal support for the argument that it had no duty to maintain the brush line, a central issue in Wuthrich's appeal. Because Wuthrich does not provide "reasoned argument," other than an attempt to incorporate arguments here from his motion for discretionary review and his reply in support of his motion for discretionary review, we hold that Wuthrich abandoned any arguments about the inapplicability of *Barton* and its progeny. *Cf. Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998).

as by requiring reduced speed through the intersection or by moving the stop line. Wuthrich's transportation engineering expert, Stevens, opined that the brush line at the intersection "obstructed drivers' view of traffic conditions on Avondale Road and 159th Street at the intersection." CP at 1265. Stevens agreed that the County did not need to remove the brush line to create a safe intersection, but opined that it needed to take other corrective measures, like reducing the speed limit to allow drivers more time to react to possible collisions. But Wuthrich does not point to any authority to suggest that taking corrective action in response to overgrown brush is part of the County's general duty, and we fail to see how a trier of fact could, based on the totality of this evidence, find that the County breached its duty to exercise ordinary care in building and maintaining its roadways in a manner reasonably safe for ordinary travel.

Wuthrich cites to *Xiao Ping Chen* in support of his position that we are to view the County's duty to exercise ordinary care in building and maintaining the roadways broadly and under the totality of the circumstances. However, *Xiao Ping Chen* does not change the result here. In *Xiao Ping Chen*, a woman sued the city for negligently maintaining one of its roads after her husband was killed crossing a busy downtown street in a crosswalk. 153 Wn. App. at 894-95. Division One reversed an order of summary judgment in the city's favor, explicitly rejecting its argument that its duty of care extended only to eliminating inherently dangerous conditions or complying with statutes, ordinances, or regulations governing the maintenance of the crosswalk. *Xiao Ping Chen*, 153 Wn. App. at 900-09. Instead, Division One held that the city's general duty of care required it to maintain its roadways in a manner reasonably safe for ordinary travel under the totality of the circumstances. *Xiao Ping Chen*, 153 Wn. App. at 900-01.

9

Here, Wuthrich alleges that the brush line obstructed Gilland's view of the intersection. Unlike in *Xiao Ping Chen*, where it is reasonable to assume that the absence of a stop sign, pedestrian signals, or a stop light rendered the roadway unsafe, the brush line here is not part of the roadway itself nor does it regulate the traffic on the roadways. Wuthrich presents no evidence that the County failed to build or maintain its roadways in a manner reasonably safe for ordinary travel. The County had, in fact, improved the roadway in 2005, and Gilland's accident with Wuthrich in 2008 was only the third that had occurred since the improvements.

In *Owen*, the plaintiff's parents were killed in a railroad crossing when the gate trapped them in their vehicle on the tracks. 153 Wn.2d at 784-85. Our Supreme Court held that "the presence of traffic signals that cause vehicles to halt on multiple sets of tracks, and the alleged limited visibility of westbound drivers" could create a question of fact about whether Tukwila breached its duty to maintain the roads in a condition that was reasonably safe for ordinary traffic or if there was an inherently dangerous or misleading condition. *Owen*, 153 Wn.2d at 790.

Again, in *Owen*, the plaintiff based her claim on a problem with the roadway itself—that it regulated traffic unsafely when cars were required to stop on the tracks. Under Wuthrich's theory of breach, however, it was the brush line that allegedly obstructed the sight line and nothing about the roadway itself that rendered it unsafe for ordinary travel. The County owed no duty to maintain the brush line, and Wuthrich's theory of liability would impose a duty on the County to monitor, reevaluate, and move the stop line or change the posted speed limit whenever the brush line might seasonally grow to obstruct a driver's view. Wuthrich's theory of liability, assuming that any condition of the road itself could trigger the County's duty to maintain the roadways in a reasonably safe condition for ordinary travel, would also eliminate any distinction between this

10

broader, common law duty and a municipality's duty to remedy inherently dangerous or misleading conditions. Wuthrich, therefore, has failed to point to a breach of the County's duty to build and maintain its roadways in a reasonably safe condition for ordinary travel.

Wuthrich also argues that the County breached its general duty to build and maintain the roadways in a manner reasonably safe for ordinary travel when it failed to move the stop line at the intersection. The County argues that summary judgment was appropriate because statutory provisions define its duty to design and maintain the intersection and that it complied with those statutory provisions. We agree with the County.

As noted above, the County's duty of care is defined primarily by the common law. *Keller*, 146 Wn.2d at 243. Compliance with roadway statutes, ordinances, or regulations is relevant to whether a municipality has breached its common law duty to provide roadways reasonably safe for ordinary travel. *Owen*, 153 Wn.2d at 787. A municipality may breach its duty to provide reasonably safe roadways even if it complies with relevant statutes or safety standards; evidence of compliance is therefore only relevant to, but not determinative of, a determination that a municipality has breached its duty. *Xiao Ping Chen*, 153 Wn. App. at 894, 900-01.

Stevens, a transportation engineer, claimed that the County had not complied with the necessary sight distances required by various design manuals because of the way that it had used the stop line. Specifically, Stevens's deposition stated that because of the overgrown brush line, the sight distance from the stop line was less than a third of the required sight distance. Gilland also testified that the blackberry bushes obstructed her view of traffic on Avondale Road. CP at 417 ("I do know that I've been through the intersection and thought that those bushes are

11

overgrown and it makes it hard to see down the roadway. . . . [F]rom what I recall, it completely blocked out my ability to see between the bushes and the power line.").

Wuthrich's argument about the sight line from the stop line is also distinguishable from *Xiao Ping Chen* and *Owen* because, again, he only alleges that the brush line obstructed the sight line and not any failure to build or maintain the roadway itself. Because the brush line is not part of the roadway, the County has no duty to maintain or to manage the brush line or to regularly monitor and adjust the stop line based on the growth of the brush line. Therefore, we hold that the County has not breached its duty to maintain the roads in a reasonably safe condition for ordinary travel.[8]

Because the evidence establishes that the brush line may have obstructed Gilland's line of sight and the condition of the brush line does not create an inherently dangerous condition nor does it trigger the County's duty to maintain the roadways in a reasonably safe condition for ordinary

---

[8] The County advances several other arguments to support its position that summary judgment was proper, including that (1) it cannot have breached its duty to provide reasonably safe roadways unless it had notice that the roadway was unsafe and failed to take corrective measures, (2) it could not have breached any duty because it had no duty to make the intersection safer and, therefore, no duty to adopt the sight lines Wuthrich claims applied, (3) it did not breach its duty of care because that duty only required it to provide roadways reasonably safe for the foreseeable uses of travelers and Gilland's negligence was unforeseeable, and (4) that Wuthrich has failed to show that the placement of the stop line was a cause in fact of his accident because he failed to show that Gilland stopped there. Because we agree with the County that it did exercise ordinary care to build and maintain its roadways in a reasonably safe manner, we do not reach the County's additional arguments.

No. 44019-9-II

travel, we hold that there is no genuine issue as to any material fact and the County is entitled to judgment as a matter of law.[9] We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.
JOHANSON, C.J.

I concur:

Melnick, J.
MELNICK, J.

---

[9] We do not reach the issue of proximate cause because we hold that there is no breach of duty.

BJORGEN, J. (dissenting) — I dissent, because genuine issues of material fact remain to be decided before the County's liability for these unsafe conditions can be determined. For this reason, the superior court's grant of summary judgment was improper under CR 56 and should be reversed.

Turning first to the governing standards, the majority is correct that *Barton v. King County*, 18 Wn.2d 573, 577, 139 P.2d 1019 (1943) (quoting *Leber v. King County*, 69 Wash. 134, 136, 124 P. 397 (1912)), held that an inherently dangerous condition is one that exists in the roadway itself. The present validity of a legal definition of dangerousness developed under the road and traffic conditions of a century ago is precarious at best. Whatever its remaining vitality, however, the *Barton/Leber* holding does not control the analysis of this appeal.

In *Rathbun v. Stevens County*, 46 Wn.2d 352, 356, 281 P.2d 853 (1955) (citing *Barton*, 18 Wn.2d at 577), our Supreme Court held that "[w]here a road itself is reasonably safe for public travel, it is not rendered inherently dangerous to travelers exercising reasonable care, solely because a municipality fails to remove vegetation located off of the road, which tends to obstruct the view." By its terms, this holding is restricted to situations where "[the] road itself is reasonably safe for public travel," allowing an interpretation that the failure to remove obstructing vegetation could create an inherent danger if the road were unsafe as a result. At most, the *Rathbun* holding means that the failure to remove obstructing vegetation by itself does not create an inherently dangerous condition.

Subsequent case law, though, has shown that the duty to eliminate inherently dangerous conditions is only one aspect of a municipality's general duty of care and that a municipality may

14

be liable without showing a failure to eliminate an inherently dangerous condition. *Chen v. City of Seattle*, 153 Wn. App. 890, 909, 223 P.3d 1230 (2009). Specifically, the court held that

> In determining whether a dangerous condition exists at a roadway and whether a municipality has breached its duty to maintain a roadway in a safe condition, the trier of fact may infer that a breach has occurred based on the totality of the relevant surrounding circumstances, regardless of whether there is proof that a defective physical characteristic in the roadway rendered the roadway inherently dangerous or inherently misleading.

*Chen*, 153 Wn. App. at 909.

Contrary to these principles, the majority concludes that because the brush line is not part of the roadway, the County has no duty to maintain or to manage it, or to regularly monitor and adjust the stop bar based on the growth of the brush line. *Chen*, however, makes clear that even if the obstructing brush is not an inherently dangerous condition, the trier of fact may still hold the municipality liable "based on the totality of the relevant surrounding circumstances." *Chen*, 153 Wn. App. at 909.

Among those relevant circumstances in this appeal are the placement of the stop bar on 159th Street and the presence of signs on Avondale Road warning traffic to slow down. Edward Stevens, Wuthrich's transportation engineer, opined that the brush line at the intersection "obstructed drivers' view of traffic conditions on Avondale Road and 159th Street" and that the "sight obstructions" created by the brush line "created an inherently dangerous condition at the intersection" that prevented stopped drivers from seeing oncoming traffic "in time to avoid a collision." Clerk's Papers (CP) at 1265. Stevens also testified in his deposition that because of the overgrown brush, the sight distance from the stop bar was less than a third of the required sight distance. Stevens was further asked at his deposition whether he noticed "any deficiencies

15

in signage" at the intersection of Avondale and 159th Street. CP at 454. He responded by stating:

> Well, it depends on how the county should have rectified the sight distance deficiency. If it was their desire to leave the blackberry bushes where they were, then there would be speed reduction called for through the intersection. If they decided to cut all the blackberries down, let's say, to provide adequate sight visibility, then the signing that's there would have been appropriate.

CP at 454.

Christa Gilland testified that the blackberry bushes obstructed her view of traffic on Avondale Road. Further, the investigating officer's accident report stated that

> [o]n the northwest corner of the intersection there is a large brush line that runs from the corner northbound along the west side of Avondale Rd[.] NE. This brush line causes somewhat of a site [sic] obstruction from vehicles stopped eastbound NE 159th St. at the stop bar looking north on Avondale Rd[.] NE. There is also a power light pole on the northwest corner of the intersection. However, if you move forward (east) to the intersection, the line of sight improves.

CP at 445.

The County argues that it cannot have breached its duty to provide reasonably safe roadways unless it had notice that the roadway was unsafe and failed to take corrective measures. The County, however, "is no more entitled to one free accident than a dog is entitled to one free bite." *Tanguma v. Yakima County*, 18 Wn. App. 555, 562, 569 P.2d 1225 (1977). A municipality "may not find refuge in a 'long history of good fortune,'" *Tanguma*, 18 Wn. App. at 563 (quoting *Butler v. L. Sonnenborn Sons, Inc.*, 296 F.2d 623, 626 (2d Cir. 1961)), if an accident resulted from its failure to "exercise ordinary care to build and maintain its roadways in a reasonably safe manner for the foreseeable acts of those using the roadways." *Keller v. City of Spokane*, 146 Wn.2d 237, 252, 44 P.3d 845 (2002). The claimed absence of notice plays no role in this analysis.

16

Stevens's and Gilland's testimony and the accident report raise genuine issues of material fact as to whether, under the totality of the circumstances test announced in *Chen*, the County breached its duty to design and maintain reasonably safe roadways with respect to signage on Avondale and placement of the stop bar on 159th Street. The same evidence also raises genuine issues of material fact under the test in *Chen* as to whether the County's breach of duty was a cause-in-fact and legal cause of Wuthrich's injuries. *Lowman v. Wilbur*, 178 Wn.2d 165, 169-72, 309 P.3d 387 (2013). For these reasons, summary judgment was improper under CR 56(c) and should be reversed.

BJORGEN, J.