**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 08 2013

*Madsen, C.J.*
CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Aug 8, 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| NATHAN LOWMAN, a single person, | |
| Petitioner, | |
| v. | |
| JENNIFER WILBUR and JOHN DOE WILBUR, husband and wife and the marital community composed thereof; COUNTRY CORNER, INC. d/b/a COUNTRY CORNER, a Washington corporation; ANACORTES HOSPITALITY, INC. d/b/a COUNTRY CORNER, a Washington corporation, | NO. 86584-1 |
| Defendants, | EN BANC |
| and | |
| COUNTY OF SKAGIT and PUGET SOUND ENERGY, a Washington corporation, | Filed     AUG 08 2013 |
| Respondents. | |

STEPHENS, J.—This case presents an opportunity to clarify the interrelationship between questions of duty and legal causation in the context of a

municipality's or utility's obligation to design and maintain reasonably safe roadways. We held in *Keller v. City of Spokane,* 146 Wn.2d 237, 44 P.3d 845 (2002), that the duty to design and maintain reasonably safe roadways extends "to all persons, whether negligent or fault-free." *Id.* at 249. Today, we hold that the reasoning of *Keller* equally supports a determination of legal causation in this context. Therefore, if the jury finds the negligent placement of the utility pole too close to the roadway was a cause of Lowman's injuries when Wilbur's car left the roadway and struck the pole then it was also a legal cause of Lowman's injuries. Contrary Court of Appeals cases predating *Keller* are disapproved. We reverse the Court of Appeals decision upholding the summary judgment order in Puget Sound Energy's (PSE) and Skagit County's favor and remand for further proceedings.

FACTS

On the night of August 5, 2005, Nathan Lowman and Jennifer Wilbur left a bar together. With Lowman as a passenger, Wilbur drove along Satterlee Road, a two-lane country road near Anacortes, Washington. As Wilbur was driving down a steep, winding hill, she lost control of her vehicle, left the road, and hit a PSE utility pole. The utility pole was located 4.47 feet from the edge of the roadway. Lowman sustained severe injuries, including the permanent disfigurement of his right arm.

Lowman brought a negligence claim against Wilbur, PSE, Skagit County and others. As to PSE and Skagit County, Lowman alleged misplacement of the utility pole. PSE and Skagit County filed a joint motion for summary judgment

solely on the issue of legal causation, stipulating to the elements of duty, breach, resulting injury, and cause in fact for the purpose of summary judgment only. Lowman presented evidence from a civil engineer that Skagit County utility pole placement standards "included a ten foot 'clear zone'" between the edge of the road and utility poles along Satterlee Road. Clerk's Papers at 167. Other evidence showed that Wilbur was speeding at the time of the accident and that she was driving while under the influence of alcohol.

The trial court granted PSE's and Skagit County's joint motion for summary judgment, dismissing Lowman's claims against those parties on the basis that the alleged negligent placement of the utility pole was not a legal cause of Lowman's injuries. The Court of Appeals affirmed the trial court's order. *Lowman v. Wilbur*, noted at 162 Wn. App. 1029 (2011). Lowman then petitioned this court for review, which was granted. *Lowman v. Wilbur*, 173 Wn.2d 1016, 272 P.3d 247 (2012).

## ANALYSIS

We review an order granting or denying summary judgment de novo. *Jones v. Allstate, Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). "A motion for summary judgment is properly granted where 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 794-95, 64 P.3d 22 (2003) (alteration in original) (quoting CR 56(c)).

In order to recover on a common law claim of negligence, a plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998). Washington "recognizes two elements to proximate cause: [c]ause in fact and legal causation." *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Here, legal causation is the only element at issue because PSE and Skagit County stipulated to the elements of duty, breach, resulting injury, and cause in fact for the purpose of summary judgment.

Legal causation "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Crowe*, 134 Wn.2d at 518. In deciding whether a defendant's breach of duty is too remote or insubstantial to trigger liability as a matter of legal cause, we evaluate "'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Hartley*, 103 Wn.2d at 779 (quoting *King v. City of Seattle*, 84 Wn.2d 239, 250, 525 P.2d 228 (1974)).

We have long recognized the interrelationship between questions of duty and legal cause. *Hartley*, 103 Wn.2d at 779-81. In *Hartley* we explained that both questions concern the policy issue of how far the legal consequences of the defendant's negligence should extend. *Id.* at 779-80; *see also Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 478, 951 P.2d 749 (1998). In the context of liability for negligent roadway design or maintenance, any consideration of the legal cause question should therefore begin with a review of the duty question, as analyzed in *Keller*, 146 Wn.2d 237.

This court in *Keller* held that "a municipality owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel." *Id.* at 249. The court rejected the notion that recognizing this responsibility toward drivers who use the roads in a negligent manner would make municipalities liable for all traffic accidents. *Id.* at 251-52. We emphasized that only *reasonable* care is owed and noted that a resulting injury must not be too remote under a legal cause analysis. *Id.* at 252.

*Keller* represented an important clarification of Washington law, correcting previous suggestions from lower courts that municipalities need not design or maintain roads to protect against negligent or reckless conduct, including conduct by those who may be comparatively at fault for their injuries. This view had gained traction in a line of lower court cases beginning with *Klein v. City of Seattle*, 41 Wn. App. 636, 705 P.2d 806 (1985) and *Braegelmann v. County of Snohomish*, 53 Wn. App. 381, 766 P.2d 1137 (1989). *See also Cunningham v. State*, 61 Wn. App. 562, 811 P.2d 225 (1991); *Medrano v. Schwendeman*, 66 Wn. App. 607, 836 P.2d 833 (1992). Under either a duty or a legal cause analysis, these Court of Appeals cases rejected the imposition of liability for roadway design and maintenance as to extremely negligent or criminally reckless drivers.

*Medrano* is the most factually similar case to this one. There, a drunk driver lost control of his truck and hit a power pole. 66 Wn. App. at 608-09. In a suit brought by one of the injured passengers, the defendant-driver Schwendeman cross-claimed against King County and Puget Power for negligent design and

maintenance of the roadway and for negligent positioning of the pole. *Id.* at 610. On summary judgment, the trial court ruled against Schwendeman. *Id.* Using a legal cause analysis, the Court of Appeals affirmed, reasoning that "[t]he County and Puget Power should not be required to protect against the consequences of criminally reckless drivers." *Id.* at 613.

As noted, this court in *Keller* took a broader view of a municipality's or utility's responsibility to protect the users of public roads. Analyzing the question of duty, the court unequivocally rejected limitations on liability for roadway design or maintenance premised on the negligence or recklessness of a driver. *Keller*, 146 Wn.2d at 249. The Court of Appeals in *Unger v. Cauchon*, 118 Wn. App. 165, 73 P.3d 1005 (2003), subsequently recognized that *Keller* departed from earlier Court of Appeals cases. *See id.* at 173-76. Nonetheless, PSE and Skagit County continue to rely on these cases, reasoning that *Keller*'s holding pertains only to the question of duty, not to the question of legal cause.

We disagree. We cannot disregard *Keller*'s holding that the responsibility to design and maintain reasonably safe roadways extends to both at fault and fault free drivers. *Keller*, 146 Wn.2d at 249. Many of the same concerns that guided the duty analysis in *Keller* must guide the analysis of legal causation in this case. Legal cause "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Crowe*, 134 Wn.2d at 518. "Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can

arise." *Schooley*, 134 Wn.2d at 479. At the same time, the policy considerations that support imposition of a duty will often compel the recognition of legal causation, so long as cause-in-fact is established under the relevant facts. *See Harbeson v. Parke-Davis, Inc.*, 98 Wn.2d 460, 476, 656 P.2d 483 (1983) (holding "as a matter of law in wrongful birth cases, if cause in fact is established, the proximate cause element is satisfied"). Such is the case here. If Lowman's injuries were in fact caused by the placement of the utility pole too close to the roadway, then they cannot be deemed too remote for purposes of legal causation.

*Schooley* is instructive in this analysis. There, an alcohol vendor sought to limit its liability for selling alcohol to a minor, where the minor shared the alcohol with another minor who severely injured herself while inebriated. *Schooley*, 134 Wn.2d at 472. The *Schooley* court recognized that the legal cause question was not determined by separate concerns as to the scope of duty, contributory negligence, or superseding cause. *Id.* at 480-83. Rather, as to legal cause, the court held that "[t]he injury suffered is not so remote as to preclude liability and the policy considerations behind the legislation are best served by holding vendors liable for the foreseeable consequences of the illegal sale of alcohol to minors." *Id.* at 483.

Likewise, here, there is no rationale to negate the sound policy preference expressed in *Keller* for holding municipalities and companies charged with maintaining utilities accountable for doing so in a reasonable fashion, particularly with regard to safe travel on public roads. Whatever the reasons for a car's departure from a roadway, as a matter of policy we reject the notion that a

negligently placed utility pole cannot be the legal cause of resulting injury. As in *Schooley*, the injury here was not so remote as to preclude liability as a matter of law. If a jury concludes that Lowman suffered injuries within the scope of the duty owed to Lowman—i.e., that his injury was not too remote—then there is no basis to foreclose liability as a matter of legal cause. Of course, this analysis answers only the legal prong of the causation analysis. At trial, a jury could limit or negate liability on any number of theories, including comparative fault or the failure to prove factual causation.

## CONCLUSION

We reverse the Court of Appeals. The trial court erred in granting summary judgment of dismissal on the issue of legal causation. Recognizing that duty and breach were stipulated for the purpose of summary judgment only, we hold that legal causation is satisfied here and remand for further proceedings.

_____

Stephen, J.

WE CONCUR:

_____

_____
Johnson, J.

Wiggins, J.

_____
Owens, J.

González, J.

_____
Fairhurst, J.

Chambers, J.P.T.

No. 86584-1

MADSEN, C.J. (concurring)—Because the majority paints with a fairly broad brush, some of its general statements might be misinterpreted as standing for the incorrect conclusion that legal causation has no independent meaning as an element of a negligence action. For example, the majority says that the reasoning that underlies the holding in *Keller v. City of Spokane*, 146 Wn.2d 237, 44 P.3d 845 (2002), that the duty to design and maintain reasonably safe roadways extends to negligent and fault-free persons, applies equally to the issue of legal causation. Majority at 2. Therefore, the majority reasons, if the jury finds cause-in-fact in this context, then legal causation must exist as well. *Id.* Read out of context, this appears to say that legal causation is necessarily found if duty and cause-in-fact exist.

I write separately to emphasize, however, that the majority opinion should not be broadly read to mean that whenever duty exists and cause-in-fact is found, legal causation exists. Any such interpretation would involve an incorrect statement of law. Rather, some considerations involved in deciding whether a duty exists may also be relevant considerations when determining legal causation. However, this does not mean that legal causation and duty are congruent—they are not.

A careful reading of the majority shows this to be the case. For example, the majority says that it disagrees with the premise that *Keller*'s holding only pertains to the

question of duty. Majority at 6. But then an important qualifier follows. The majority adds that "[m]any of the same concerns that guided the duty analysis in *Keller* must guide the analysis of legal causation in this case." Majority at 6. This means that a court must independently examine the questions of duty and legal causation, recognizing that the same or similar policy concerns may apply to each but do not substitute for the distinct elements of the cause of action.

In the context here, the close relationship between duty and legal causation occurs because of the fundamental policy questions involved in deciding whether a duty to design and maintain roadways is owed to drivers who are themselves negligent and whether legal causation can be found notwithstanding the negligence of the driver. It is the particular context that produces this close relationship. Of course, if, rather than describing the similarities here, the majority instead engaged in a detailed description of the duty found in *Keller* and then independently engaged in a detailed analysis of legal causation here, the relationship between the elements in this context might be clearer. It would show more unmistakably how the elements of duty and legal causation are driven by many of the same considerations and would also show whether additional policy-based considerations are at work.[1]

---

[1] Although the dissent is justifiably concerned about taxpayers ultimately paying for damages arising out of criminal behavior, and it seems counterintuitive to speak of public policy favoring legal causation when both the driver and the plaintiff-passenger are intoxicated, the legislature appears to be moving in this direction.

For example, the legislature has weighed in on the question of proximate cause where the driver of a motor vehicle is intoxicated and her intoxicated passenger is injured. At one time, intoxication of the plaintiff was a complete defense to liability if the intoxication was a

2

At the end of the day, there is no shortcut. Parties are advised that they cannot simply reduce this case to a formula of "duty plus cause-in-fact equals legal causation." Rather, duty and legal causation are separate elements that must be determined in accord with our cases. *E.g.*, *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wn.2d 468, 951 P.2d 749 (1998); *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985).

With these clarifications, I join the majority opinion.

---

proximate cause of the injury and the plaintiff was found to be more than 50 percent at fault. The legislature amended the relevant statute to state an exception that provides that this rule does not apply in a personal injury action against an intoxicated motor vehicle driver whose condition was a proximate cause of the injury and the intoxicated plaintiff's condition was not a proximate cause of the injury causing occurrence. RCW 5.40.060(2). The amendment reflects legislative policy altering the element of legal causation when intoxicated drivers are involved in accidents on the roadways.

Madsen, C. J.

No. 86584-1

J.M. JOHNSON, J. (dissenting)—Washington taxpayers should not be forced to pay massive judgments to criminal motorists who cause injuries to themselves or their passengers. The majority impermissibly uses *Keller v. City of Spokane*, 146 Wn.2d 237, 44 P.3d 845 (2002), as a broad broom, sweeping the legal causation prong into the duty prong of the common law negligence analysis. In this way, the majority relies on *Keller*'s narrow language about municipalities' duties to motorists to answer not only the duty question but also sweep in the legal causation question, presuming that the first necessarily answers the second.

Legal causation "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Crowe v. Gaston*, 134 Wn.2d 509, 518, 951 P.2d 1118 (1998). It certainly cannot be a wise policy of this state to make Washington taxpayers insurers on behalf of criminal motorists.

I would preserve the court's "gatekeeper" function noted in *Keller*,[1] holding that a court may find that criminal acts break the causal chain and thus are not the legal cause in a common law negligence action against a municipality. I would accordingly affirm the Court of Appeals. On these grounds, I respectfully dissent.

FACTS AND PROCEDURAL HISTORY

Nathan Lowman met Jennifer Wilbur at the Country Corner Bar and Grill in Skagit County on the night of August 5, 2005. He admitted that they both had been drinking that evening. Lowman also told a Washington State Patrol (WSP) investigator that he had seen Wilbur drink at least two cocktails that evening, and he stated in his complaint that Wilbur was "apparently intoxicated" and unfit to operate a motor vehicle. Clerk's Papers at 524-25. Despite this knowledge and his instinct to the contrary, Lowman agreed to ride as Wilbur's passenger.

Wilbur began driving with Lowman along Satterlee Road, which was a two-lane, curvy, country road near Anacortes, Washington. The posted speed limit was 25 miles per hour, and there were signs to warn drivers of

---

[1] "[T]he court still retains its gatekeeper function and may determine that a municipality's actions were not the legal cause of the accident." *Keller*, 146 Wn.2d at 252.

curves in the road. As Wilbur was driving down a steep hill and trying to negotiate the turns in the roadway, she lost control of her vehicle, left the road, and hit a PSE utility pole. The WSP estimated that Wilbur's car was traveling, at a minimum, between 34 and 38 miles per hour upon impact. Additionally, later testing showed that Wilbur had nearly twice the legal limit of alcohol in her system, measuring 0.14.[2] Lowman sustained severe injuries and permanent disfigurement to his right arm. Wilbur pleaded guilty to vehicular assault under RCW 46.61.522(1)(c), a class B felony. In addition to monetary penalties, the court sentenced Wilbur to three months in jail, a year of community custody, and driving under influence/substance abuse treatment and conditions.

Lowman then filed a negligence claim against PSE and Skagit County for misplacement of the utility pole. The trial court granted PSE's and Skagit County's joint motion for summary judgment, dismissing Lowman's claims against those parties. The court concluded that the alleged negligent acts of PSE and Skagit County were not the legal cause of Lowman's

---

[2] RCW 46.61.502(1)(a) provides that a person is guilty of driving while under the influence if "the person has, within two hours after driving, an alcohol concentration of 0.08 or higher."

injuries. The Court of Appeals affirmed the trial court's order granting summary judgment. As noted, I would affirm the Court of Appeals.

ANALYSIS

In order to recover in a common law negligence action in the State of Washington, a plaintiff "must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Crowe*, 134 Wn.2d at 514. "Washington law recognizes two elements to proximate cause: [c]ause in fact and legal causation." *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Here, legal causation is the only element at issue because PSE and Skagit County stipulated to the elements of duty, breach, resulting injury, and cause in fact for the purpose of summary judgment only.

Legal causation "is grounded in policy determinations as to how far the consequences of a defendant's acts should extend." *Crowe*, 134 Wn.2d at 518. A determination of liability based on legal causation is a mixed consideration of logic, common sense, justice, policy, and precedent in deciding whether a defendant's breach of duty is too remote or insubstantial. *Hartley*, 103 Wn.2d at 779, 784. Legal causation is generally a question of

law. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 204, 15 P.3d 1283 (2001).

*Keller v. City of Spokane*

The majority contends that Washington's law regarding legal causation was substantially impacted when this court decided *Keller*, 146 Wn.2d at 237. In that case, we held that a municipality owes a duty to both negligent and fault-free drivers, but we explicitly clarified that "the court still retains its gatekeeper function and may determine that a municipality's actions were not the legal cause of the accident." *Id.* at 249, 252.

The majority fails to recognize that *Keller*'s relevant holdings were restricted to comparative fault and municipal duty. The case does not provide support for collapsing the duty prong into the legal causation prong of the common law negligence analysis, as the majority suggests. In fact, the only time the case even mentions "legal cause" is to note that a legal cause determination is made separate and apart from the legal duty determination, preventing municipalities from becoming insurers of negligent acts. *Id.* at 252. The wisdom of this language is made obvious in this case. By making the duty analysis determinative of legal causation,

municipalities—and by extension, taxpayers—become insurers of drivers' own criminal behavior.

The majority quotes heavily from *Schooley v. Pinch's Deli Market, Inc.,* 134 Wn.2d 468, 951 P.2d 749 (1998). *See* majority at 7. However, the majority misses a key point made in the case:

> [A] court should not conclude that the existence of a duty automatically satisfies the requirement of legal causation. This would nullify the legal causation element and along with it decades of tort law. Legal causation is, among other things, a concept that permits a court for sound policy reasons to limit liability where duty and foreseeability concepts alone indicate liability can arise.

*Schooley,* 134 Wn.2d at 479.

The majority makes two statements that indicate its insistence on making a finding of duty also determinative of legal causation. First, "[i]f Lowman's injuries were in fact caused by the placement of the utility pole too close to the roadway, then they cannot be deemed too remote for purposes of legal causation." Majority at 7. Second, "[i]f a jury concludes that Lowman suffered injuries within the scope of the duty owed to Lowman—i.e., that his injury was not too remote—then there is no basis to foreclose liability as a matter of legal cause." *Id.* at 8. I fundamentally disagree with both of these statements.

Legal causation is itself a determination separate from the other factors in the common law negligence analysis. Regardless of whether Lowman's injuries were caused by the placement of the utility pole,[3] the court has an obligation to define the scope of duty and draw the line for liability. This legal causation analysis is based in part on policy considerations, and the consequences of criminal behavior may be so remote as to justify foreclosure of a municipality's liability. This is a sound public policy that prevents taxpayers from insuring against the consequences of criminal behavior. If we embrace the policy set forth in the majority opinion, this state is, in essence, incentivizing crime by removing some of the financial risk associated with criminal behavior.

CONCLUSION

This court maintains a long tradition of embracing the following principle: "'Given a choice between a rule that fosters individual responsibility and one that forsakes personal accountability, we opt for personal agency over dependency and embrace individual autonomy over

---

[3] Based on the limited record, there is no showing that the county or utility company could have even located the utility pole 10 feet off the road (likely outside the right-of-way). For various reasons, including property lines and the character of the land along Satterlee Road, this "clear zone" could have been an impossibility with respect to the utility pole in question.

paternalism.'" *Schooley*, 134 Wn.2d at 491 (Sanders, J., dissenting) (quoting *Estate of Kelly v. Falin*, 127 Wn.2d 31, 42, 896 P.2d 1245 (1995)). In a sweeping move that defies our precedent, the majority takes the legal causation determination out of the hands of the court in negligence actions such as this one. Such a move will most certainly open this state's taxpayers to liability based on the criminal acts of others. No longer will criminal motorists such as Wilbur need to take responsibility for the consequences of their actions. Instead, the taxpayers of this state will be the insurers against harm caused by criminal behavior. Because I do not support foreclosing a court's ability to determine that no legal cause is present in torts caused by criminal action, I dissent.