# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOSHUA J. WOOLCOTT, | ) | No. 73514-4-I |
| Appellant, | ) | DIVISION ONE |
| v. | ) | |
| CITY OF SEATTLE, | ) | UNPUBLISHED |
| Respondent. | ) | FILED: May 23, 2016 |

Cox, J. — Joshua Woolcott appeals the summary judgment dismissal of his personal injury action against the City of Seattle. Because he fails to establish that the City owed him any duty, a necessary element of his claim, we affirm.

In the spring of 2011, Woolcott planned to attend the Seattle Mariners' opening home game. At about 7 p.m., he walked towards the stadium with friends on the sidewalk, approaching the intersection of South Royal Brougham Way and Fourth Avenue South.

A police officer at the middle of this intersection blocked westbound vehicle traffic while waving Woolcott and other pedestrians through. Woolcott stepped off the curb and into a pothole he had not noticed, breaking his foot. He admits this pothole "was not located on the painted crosswalk markings" at the

intersection.[1] Instead, this pothole was toward the middle of the intersection. Woolcott planned to walk "straight across from the northeast curb corner to a point directly across at the same spot on the southeast corner," a route parallel to the marked crosswalk.[2]

Woolcott commenced this action, claiming that the City failed to keep the intersection safe for ordinary travel. The City moved for summary judgment, arguing that Woolcott failed to establish that it had violated its duty of care. Specifically, it argued that, because Woolcott crossed outside of a marked crosswalk, it did not owe a duty to maintain that portion of the street safe for pedestrian travel. The court granted the motion for summary judgment, dismissing Woolcott's claims.

Woolcott appeals.

## DUTY

Woolcott argues that the City owed a duty to keep the street area outside the marked crosswalk reasonably safe for pedestrian travel. We hold there is no such duty under the circumstances of this case.

Courts may grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[3] When ruling on summary judgment, the trial court considers the evidence in the

---

[1] Brief of Appellant at 4.

[2] Clerk's Papers at 122.

[3] Wash. Fed. v. Harvey, 182 Wn.2d 335, 340, 340 P.3d 846 (2015) (quoting Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)).

light most favorable to the nonmoving party.[4] We review de novo summary judgment, applying the same standards as the trial court.[5]

"In order to recover on a common law claim of negligence, a plaintiff 'must show (1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury.'"[6]

Whether a municipality owes a duty in a particular situation is a question of law.[7] We review de novo questions of law.[8]

The sole issue before us is whether a duty existed. "It is well established that a municipality has the duty 'to maintain its roadways in a condition safe for ordinary travel.'"[9] We "must decide not only who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed."[10] "[T]he answer to the third question defines the standard of care."[11]

---

[4] Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989).

[5] Wash. Fed., 182 Wn.2d at 339.

[6] Wuthrich v. King County, 185 Wn.2d 19, 25, 366 P.3d 926 (2016) (quoting Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013)).

[7] Id.

[8] Lyons v. U.S. Bank Nat'l Ass'n, 181 Wn.2d 775, 783, 336 P.3d 1142 (2014).

[9] Wuthrich, 185 Wn.2d at 25 (quoting Owen v. Burlington N. Santa Fe R.R., 153 Wn.2d 780, 786-87, 108 P.3d 1220 (2005)).

[10] Keller v. City of Spokane, 146 Wn.2d 237, 243, 44 P.3d 845 (2002).

[11] Id.

Courts must consider the intended use of a street.[12] "[T]he law directs pedestrians to use marked crosswalks."[13] Thus, cities must ensure that crosswalks are safe for pedestrians.[14] In contrast, cities have no duty to ensure that pedestrians can safely cross the street where there is no crosswalk.[15]

RCW 46.04.160 defines a "crosswalk" as:

> the portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or in the event there are no sidewalks then between the intersection area and a line ten feet therefrom, ***except as modified by a marked crosswalk.***[16]

This court considered the scope of the duty a municipality owed to a pedestrian in McKee v. City of Edmonds.[17] There, Mary McKee tripped while crossing a street in downtown Edmonds. Both ends of the block had marked crosswalks. She became distracted and attempted to cross the street mid-block. Just before reaching the center of the street, she tripped in a pothole, fracturing her leg. The marked crosswalks were unobstructed and properly maintained when she fell.

She sued the City for negligence, arguing that jaywalking was customary and foreseeable at the area of her fall. She admitted that she was jaywalking,

---

[12] Xiao Ping Chen v. City of Seattle, 153 Wn. App. 890, 903, 223 P.3d 1230 (2009).

[13] Id. at 906.

[14] Id. at 907.

[15] Hansen v. Wash. Nat. Gas Co., 95 Wn.2d 773, 778, 632 P.2d 504 (1981).

[16] (Emphasis added.)

[17] 54 Wn. App. 265, 773 P.2d 434 (1989).

but, nevertheless, argued that the City owed her a duty. The superior court dismissed her action, and this court affirmed.

This court quoted the supreme court's opinion in Hansen v. Washington Natural Gas Co.[18] to address the scope of the municipality's duty:

> Plaintiff was jaywalking. In effect he selected and created his own crosswalk mid-block, and insists the city should have made it safe for him. To permit him to recover on the basis that the city was negligent would require us to hold that the city must maintain the full block of a street safe for pedestrian cross travel when the sidewalk, or even a portion thereof, is blocked. This we will not do. At the maximum, plaintiff would have [had] to walk no more than one-half block to reach a crosswalk.[19]

Here, there is no evidence that the marked crosswalk was blocked, full, or otherwise unusable. Nevertheless, Woolcott chose to step into the street outside the marked crosswalk. There simply is no duty the City owed him to make this area safe for his travel.

This court specifically rejected the argument in McKee that foreseeability created a duty. We do the same here, for the same reasons.

Woolcott argues that the marked crosswalk serves merely as a guide for pedestrian traffic and does not determine the scope of the duty owed. We disagree.

Under RCW 46.04.160, the crosswalk markings established the crosswalk at this intersection. Thus, the markings were not merely a guide for pedestrians.

Additionally, both Hansen and McKee stand for the principle that the scope of the duty owed under the circumstances here is defined by the

---

[18] 95 Wn.2d 773, 632 P.2d 504 (1981).

[19] McKee, 54 Wn. App. at 267.

5

availability of unobstructed, marked crosswalks. Woolcott fails to cite any persuasive authority to the contrary.

Woolcott argues that the police officer directed him to cross the intersection as he did. The record does not support this argument.

Woolcott testified by declaration that he entered the intersection when an officer directing traffic waved pedestrians into the intersection. But nothing in Woolcott's declaration, or anywhere else in the record, indicates that the officer directed Woolcott to cross outside of the marked crosswalk.

The record shows that officers directing traffic after Mariners games, when pedestrian traffic is heavy, sometimes allow pedestrians to cross "all ways" or diagonally at the intersection. But nothing in the record establishes that officers were doing so before the Mariners game when Woolcott crossed the intersection. Accordingly, this argument is unpersuasive.

Woolcott also argues that, under Berglund v. Spokane County,[20] foreseeability determines the City's duty. We disagree.

In that case, Spokane County built a bridge for both pedestrian and automobile traffic.[21] The plaintiff was injured when a car struck her as she crossed the bridge.[22] The supreme court determined that the county had a duty to make the bridge reasonably safe for pedestrians.[23] But this duty did not arise

---

[20] 4 Wn.2d 309, 103 P.2d 355 (1940).

[21] Id. at 311.

[22] Id. at 312.

[23] Id. at 317.

merely because it was foreseeable that pedestrians would use the bridge. Rather, the duty arose because the county invited pedestrians to use the bridge. The supreme court noted, "It is the invitation, expressly or impliedly extended to the public, that imposes the obligation."[24]

Here, as explained earlier, Woolcott fails to establish that the City invited him to cross the intersection outside of the marked crosswalk. Accordingly, under Berglund, the City did not owe a duty to make that part of the intersection safe for pedestrians.

Finally, Woolcott argues that his use of the street was not unlawful. Thus, he contends his use goes to the issue of contributory negligence, not duty. We disagree.

In this case, the City's duty turns on whether it invited Woolcott to cross where he did. Accordingly, whether Woolcott crossed in the marked crosswalk goes to the City's duty. Whether it may also go to Woolcott's contributory negligence is irrelevant. Thus, this argument is unpersuasive.

We affirm the summary judgment order.

_Cox, J._

WE CONCUR:

_____

_____

---

[24] Id.