# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| THE ESTATE OF WESLEY A. EVANS, by and through its personal representative, WILLIAM EVANS, JR., individually and on behalf of the beneficiaries of the ESTATE OF WESTLEY A. EVANS; and DELLA EVANS, individually, <br><br> Appellants, <br><br> v. <br><br> THE CITY OF TACOMA, a municipal entity under the laws of the State of Washington, TACOMA PUBLIC UTILITIES, and TACOMA RAIL, agencies/sub-divisions of the City of Tacoma, <br><br> Respondents. | No. 57218-4-II <br><br><br><br><br><br><br> UNPUBLISHED OPINION |

CRUSER, J. – Wesley Evans struck a train that was nearly stopped on a railroad crossing and died from the collision. Evans' father, as personal representative of Evans' estate (the Estate), brought a wrongful death action against the City of Tacoma, Tacoma Public Utilities, and Tacoma Rail (Tacoma), alleging that Tacoma failed to maintain the roadway in a manner safe for ordinary travel due to visibility issues and inadequate warnings to mark the crossing.

Tacoma moved for summary judgment, arguing that the Estate could not establish that any negligence by Tacoma proximately caused Evans' death. The Estate's response included a motion to strike a surveillance video showing footage of the collision as well as any argument by Tacoma that Evans was playing a video game on his phone at the time of the collision. The trial court

denied the Estate's motion to strike, granted Tacoma's motion for summary judgment, and denied the Estate's later motion for reconsideration. The Estate appeals.

We hold that there are genuine issues of material fact regarding whether Tacoma breached its duty to maintain the railroad crossing and whether this negligence proximately caused Evans' death. Accordingly, we reverse the trial court's order granting summary judgment to Tacoma and remand for proceedings consistent with this opinion.

FACTS

I. BACKGROUND

In September 2017, Evans sustained fatal injuries after he struck a train that was almost stopped on the tracks at a railroad crossing. The crossing, at East Milwaukee Way and Lincoln Avenue in Tacoma, has trains from Tacoma Rail, Union Pacific, and Pacific Rail passing through at all hours of the day. The crossing is apparently on a main route for Pacific Rail employees, and Pacific Rail employees are shown the tracks and given warnings about the train activity at the crossing. It is marked by a railroad crossing sign in the shape of an X with a yield sign, and "2 TRACKS" appears underneath the yield sign. Clerk's Papers (CP) at 411.There is no other signage or warning system to alert drivers to the presence of trains in the crossing.

For about an hour prior to the collision, a train with empty rail cars was stopped in the crossing. The cars had yellow reflective tape on them. At approximately 2:42 a.m., when Evans was leaving work as a longshoreman at Pacific Rail, he approached the railroad crossing. By that time, the train was moving at two miles per hour in the crossing. Evans' car struck a coupler between two rail cars and caused them to disconnect. A nearby truck driver "noted that a black car had collided with the side of [the] train" and went over to check on the driver, appearing about 90

2

seconds after the collision. *Id.* at 446. It appeared that Evans was not alive. The truck driver called 911 to report the incident.

There was extensive damage to Evans' car. The front of the car and both doors were crushed, with the passenger door partially open, the windshield was shattered, and the steering column had been forced forward.

EMT David Marston was among the first group of first responders at the scene of the collision. Marston testified that, upon his arrival at the scene, "Mr. Evans's cellphone [was] on his left thigh face-down with his hand still on top of the phone almost holding it. When [Marston] looked at the phone to see what was playing, [he] recognized there was a Pokemon Go[1] application running." *Id.* at 429. Marston showed the phone to one of the responding officers and then put it back where he found it on Evans' thigh.

Port of Tacoma overhead surveillance cameras recorded the collision. Officer Brandon Cockcroft used the video footage to calculate how fast Evans was driving at the time of the collision, and determined that he was traveling 42 miles per hour.[2] The video apparently[3] also includes about seven and a half minutes prior to the collision and shows three other drivers turning

---

[1] Pokémon Go is an augmented reality video game in which a user follows a virtual map mirroring real-world surroundings. As the user travels, different Pokémon characters appear on the screen and can be caught by the user.

[2] The speed limit was 35 miles per hour where Evans' car was, but increased to 40 miles per hour on the other side of the tracks.

[3] The video was not designated for our review, so this opinion relies on the representations by Tacoma's attorney from his declaration in support of summary judgment and Officer Cockcroft's report. Although the Estate challenged the admissibility of the video, it did not appear to challenge these representations of what the video shows.

around in the road. It did not appear from the video that Evans applied his brakes before impact, and he appeared to veer slightly to the right just prior to the collision.

## II. LITIGATION

The Estate brought a wrongful death action against Tacoma, alleging that Tacoma breached its duty to maintain its roadways in a manner safe for ordinary travel, including approaches to railroad crossings. Specifically, the complaint alleged that the crossing at issue did not have adequate warnings to alert drivers to the presence of a train and that there was poor visibility at the crossing.

Tacoma moved for summary judgment, arguing that the Estate could not establish any acts or omissions of Tacoma were a proximate cause of the accident because "[t]he only reasonable inference as to why [Evans] did not see the train, if at all, until immediately before the collision is that [Evans] was distracted and not looking at the road in front of him for some reason." *Id.* at 421. In support of its motion, Tacoma submitted a declaration from Marston, who described finding Evans' cell phone with Pokémon Go on the screen, and declarations from the witness who dialed 911, another first responder, and Tacoma Rail employees, one of whom attached photographs he took after the collision. Most of the individuals who arrived at the scene after the accident testified that the train was visible when they arrived. Tacoma also provided the surveillance video of the collision.

In response, the Estate provided declarations from 21 longshoremen or other Port of Tacoma employees. Each of the declarants testified that the crossing has poor visibility. Many criticized the lighting, and some also criticized the signage to warn drivers about trains in the crossing. In addition, some specified that empty rail cars were particularly hard to see because

4

"you can see clear through the train to the other side of the road." *Id.* at 484. Some also explained that flares were occasionally put out to indicate the presence of a train, but that the use of flares was inconsistent.

In addition, the Estate provided a declaration by human factors engineer Joellen Gill, in which she opined that the crossing was dangerous and that Evans' death could have been prevented through actions by Tacoma to ensure the safety of motorists. For example, Gill explained that strategies to mitigate a hazard that rely on administrative controls or warnings to alter behavior is the least effective mitigation method because it is too reliant on human behavior. She also explained that the inconsistent use of flares at the crossing was problematic because it "creates confusion and a potential reliance on the existence of such warnings." *Id.* at 874.

The Estate also submitted records related to other collisions occurring at the same railroad crossing that were obtained through a public records request, in addition to emails obtained through discovery regarding poor visibility at the crossing.[4] The emails contain requests to improve the intersection, including painting a railroad crossing warning on the pavement and putting a street light near the crossing. One email from a safety manager at Tacoma Rail in 2012 specifically requested street lights on either side of the tracks because "[i]t is pretty dark in that area and when a[ ] train is across the road especially flat cars, it is difficult for motorists to see them and could run into them." *Id.* at 794.

The Estate's response also included a motion to strike the video of the collision and "[a]ny reference, allusions, or argument that [Evans] was playing 'Pokémon Go' immediately prior to

---

[4] One of the emails was from an employee at the Port of Tacoma to a City of Tacoma employee, and another was from a Tacoma Rail safety manager to another person at Tacoma Rail, inquiring about who to email at the City of Tacoma.

and/or at the time of the collision." *Id.* at 1264. The Estate argued that the video presented different lighting conditions because it was black and white, was from a different vantage point than what Evans would have seen, and would be likely to provoke an emotional response from the jury due to its startling nature. Regarding Pokémon Go, the Estate argued that Tacoma's argument was speculative because Tacoma did not provide evidence from forensic examination of the phone that the game was actually being played at the time of the collision.[5]

The trial court denied the Estate's motion to strike and granted Tacoma's motion for summary judgment. The Estate moved for reconsideration under CR 59(a)(9) ("substantial justice has not been done"), presenting evidence that key features of Pokémon Go could not have been played at the speed at which Evans was traveling prior to the collision. Tacoma's response, supported by a video game expert declaration, speculated that Evans "could have worked around the Pokémon Go speed restrictions and been playing the full Pokémon Go videogame at the time of the accident." *Id.* at 1542. The trial court denied the Estate's motion for reconsideration.

The Estate appeals the trial court's decisions granting summary judgment to Tacoma, denying the Estate's motion to strike, and denying the Estate's motion for reconsideration.

DISCUSSION

I. STANDARD OF REVIEW

We review a summary judgment order de novo, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Meyers v. Ferndale Sch.*

---

[5] Notably, neither party provided such evidence, even though the Estate had previously represented in a motion for protective order that its expert concluded that the Pokémon Go application "was last visible on the screen some 5 hours before the collision at issue occurred." CP at 1304. The record does not contain any declaration attesting to this fact.

*Dist.*, 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018).

In addition, we review a trial court's denial of a motion for reconsideration "to determine if the trial court's decision is manifestly unreasonable or based on untenable grounds." *Martini v. Post*, 178 Wn. App. 153, 161, 313 P.3d 473 (2013).

## II. SUMMARY JUDGMENT DISMISSAL

The Estate argues that the trial court erred by granting summary judgment to Tacoma because there are issues of material fact regarding whether Tacoma breached its duty to maintain the railroad crossing and whether the breach of this duty was a proximate cause of the accident resulting in Evans' death. Tacoma argues that the Estate provided no evidence that an act or omission by Tacoma proximately caused Evans' death. We hold that there are genuine issues of material fact regarding whether Tacoma was negligent in failing to maintain its railroad crossing to protect against even potentially negligent conduct by others and whether such negligence proximately caused Evans' death.

A. LEGAL PRINCIPLES

A plaintiff seeking to recover on a claim of negligence must establish four elements: duty, breach, proximate causation, and injury. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013). These elements apply equally to municipalities as they do to private parties. *Keller v. City*

7

*of Spokane*, 146 Wn.2d 237, 242-43, 44 P.3d 845 (2002). "[A] municipality owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel." *Id.* at 249.

Proximate cause has two elements that must be satisfied: (1) cause in fact and (2) legal causation. *Lowman*, 178 Wn.2d at 169. " 'Cause in fact refers to the "but for" consequences of an act.' " *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016) (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). Cause in fact is typically a jury question. *Id.* Legal causation, on the other hand, " 'is grounded in policy determinations as to how far the consequences of a defendant's acts should extend.' " *Lowman*, 178 Wn.2d at 169 (quoting *Crowe v. Gaston*, 134 Wn.2d 509, 514, 951 P.2d 1118 (1998)). An injury may have more than one proximate cause. *N.L.*, 186 Wn.2d at 437.

The Washington State Legislature adopted comparative fault in 1981. *Keller*, 146 Wn.2d at 243. Under the doctrine, "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." RCW 4.22.005.

B. ANALYSIS

Tacoma provides no argument regarding any duty owed to Evans, or breach of that duty, because regardless of any breach of a duty owed to Evans, Tacoma states, "Appellants provided no evidence on proximate cause." Br. of Resp'ts at 21. We disagree.

When reviewing a summary judgment order, we must view the facts, and all reasonable inferences from the facts, in the light most favorable to the nonmoving party. *Meyers*, 197 Wn.2d at 287. Tacoma assumes that Evans was distracted while driving toward the crossing because this

is "[t]he only reasonable inference as to why Evans did not see the train, if at all, until immediately before the collision." Br. of Resp'ts at 23. But, taking the facts in the light most favorable to the Estate, the fact that Evans swerved only at the last minute could have been because of the clearly documented visibility issues at the crossing. Twenty-one longshoremen and other Port of Tacoma employees testified to the poor visibility at the crossing, Tacoma received several requests for improvements to visibility at the crossing, and the visibility problems are plainly evident from the photographs submitted by Tacoma in support of its motion for summary judgment.

Tacoma's evidence that others found the train to be visible that evening—including the witness who called 911 to report the accident, first responders, and the three other drivers who approached the intersection (before Evans' collision) but turned around as shown in the video submitted to the trial court—merely underscores the issue of fact to be resolved by a jury. The train was disconnected after Evans hit it, and all people responding to the scene, including the witness who called 911, were specifically looking for a collision when they approached the area. These witnesses, therefore, were not only specifically on the lookout for a train in the crossing, but also had a different view of the train due to its separation after the collision and additional activity at the crossing as more people responded to the scene. Furthermore, the video evidence of other drivers turning around before reaching the crossing does not establish that the train was not difficult to see; it merely establishes that some drivers saw it. There was no testimony from these drivers regarding whether they found it difficult to see the train.

Tacoma further argues that the only reasonable inference from the evidence that Pokémon Go was visible on Evans' phone screen when first responders arrived is that Evans was playing the game while he was driving. But, again, this court must take the facts and all reasonable

inferences in the light most favorable to the Estate. *Meyers*, 197 Wn.2d at 287. Especially considering the fact that neither party presented expert testimony regarding when the game was last played on Evans' phone, the jury could just as easily infer that the game was open but not being actively played by Evans as he approached the intersection (for example, he had been playing the game and left it open but was not playing it immediately prior to the collision). Furthermore, the testimony from Marston that the phone was found on Evans' lap with his hand over the phone does not lead to the conclusion that it was on Evans' lap immediately before the collision because, given the extensive damage to the car, a reasonable fact finder could conclude that the phone would not be in the same location before, during, and after the collision when responders arrived, given the photographs in evidence.

At a minimum, there is a genuine issue of material fact regarding whether Evans was playing Pokémon Go immediately prior to the collision. And, regardless, "[a]ny negligence on the part of the decedent[ ] is irrelevant to whether a material question of fact regarding the alleged breach of [Tacoma's] duty survives summary judgment." *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Tacoma owes a duty to all persons to maintain its roadways in a condition reasonably safe for ordinary travel, even for persons who are potentially negligent. *Keller*, 146 Wn.2d at 249. Because an injury can have more than one proximate cause, any negligence by Evans that proximately caused the collision does not exclude any negligence by Tacoma in failing to maintain its roadways *as an additional cause*. *See N.L.*, 186 Wn.2d at 437. Rather, any contributory fault by Evans would merely proportionately diminish any recovery; it would not completely bar recovery. RCW 4.22.005.

As stated by Tacoma in its reply in support of summary judgment: "There is no evidence where the phone was in the car, [and] there is no evidence where Mr. Evans was looking as he was driving towards the train." CP at 1277. Without such evidence, and taking the facts in the light most favorable to the Estate, it was improper for the court to grant summary judgment to Tacoma because there are genuine issues of material fact regarding proximate causation.[6]

CONCLUSION

We hold that there are genuine issues of material fact regarding whether Tacoma was negligent in failing to maintain the crossing and whether such negligence was a proximate cause of Evans' death and, therefore, we reverse the trial court's order granting summary judgment to Tacoma. We remand for proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

GLASGOW, C.J.

VELJACIC, J.

---

[6] Because we hold that the trial court erred by granting summary judgment to Tacoma, we need not address whether the trial court erred by denying the Estate's motion to strike or by denying the Estate's motion for reconsideration.