IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANGELICA CAMPBELL, a resident of the State of Washington; and NABILA HAJI-ALI, a resident of the State of Minnesota, | No. 86035-6 |
| Appellants, | DIVISION ONE |
| AMANDA BRANCH, a resident of the State of Washington; MEGDALENA PEREZ HILTS, a resident of the State of Washington; and TESSA MORTENSON, a resident of the State of Minnesota, | UNPUBLISHED OPINION |
| Plaintiffs, | |
| v. | |
| SOLOMON SIMONE, a resident of the State of Washington; JONATHAN GANT, a resident of the State of Washington; SARA BELCHE, a resident of the State of Washington; SHAINA RAE ESSIG, a resident of the State of Washington; RAHMEECE HOWELL, a resident of the State of Washington; KATIE FULFORD, resident of the State of Washington; BLACK UMBRELLA, INC, a Washington for-profit corporation; COMMODITY PROPERTIES, LLC, a Washington limited liability company; DREAMGIRLS OF LAKE CITY, LLC, a Washington limited liability company; DEJA VU LAKE CITY, INC, a Washington for-profit corporation; TALENTS NORTHWEST, LLC, a Washington limited liability company; DUSTIN ADAMS, a resident of the State of | |

Washington; and EMILY
SCHLACKMAN, a resident of the State
of Washington,

                Defendants,

CITY OF SEATTLE, a government
corporation under the laws of the State
of Washington; and SEATTLE POLICE
DEPARTMENT, a governmental agency
within the City of Seattle,

                Respondents.

SMITH, C.J. — In 2017, Tessa Mortenson contacted the Seattle Police Department (SPD) and alleged that Solomon Simone involved her in sex trafficking and was physically abusive. After the detective assigned to the case met with Simone and subsequently failed to open a formal investigation, two of Simone's alleged victims brought suit against the City of Seattle (the City), citing negligence regarding the investigation and negligent supervision leading to an escalation in Simone's abuse toward current alleged victims.

The trial court granted the City's motion for summary judgment to dismiss the case, indicating that the plaintiffs' claim was based on negligent investigation, which is not a cognizable claim in Washington State, and they failed to raise a genuine issue of material fact as to breach of a duty in speaking with Simone. On appeal, the plaintiffs assert that a genuine issue of fact exists as to whether the City failed to conduct an investigation at all and whether the City breached the duty of reasonable care and that the public duty doctrine does not protect the City. Because no cause of action exists in Washington State for negligent

investigation and because the plaintiffs fail to establish breach of a duty or causation of injury, we affirm the trial court's order granting summary judgment.

FACTS

<u>Background</u>

Beginning the summer of 2012, the plaintiffs allege that Solomon "Raz" Simone, a prominent rapper in the Seattle area, began grooming vulnerable young women and pressuring them into sex work and selling drugs.  In August 2017, Tessa Mortenson contacted SPD to serve a temporary protection order on Simone.  Mortenson followed up her e-mail with several phone calls, and a Victim Support Team Advocate returned her call, asking if she wanted to give a statement regarding Simone's behavior because another alleged victim had come forward.  The advocate put her in contact with Detective William Guyer, a detective in SPD's Vice High Risk Victims Unit.[1]  Mortenson provided Guyer with details about Simone's operation as well as her own experience with him.

Later that month, Detective Guyer met with Simone at a local coffee shop. Detective Guyer confronted Simone about Mortenson's allegations, as well as those of another witness, Brittany Hutchings, and asked Simone for his side of the story.  After the meeting, Simone sent Detective Guyer a number of documents, all purportedly supporting his claim that the women were simply

---

[1]  The SPD Vice High Risk Victims Unit is tasked with "responding to and investigating complaints of human trafficking, whether sex or forced labor." <u>Human Trafficking</u>, Seattle Police Department, https://www.seattle.gov/police/about-us/issues-and-topics/human-trafficking [https://perma.cc/7KG7-3RH6].

jealous ex-girlfriends. Detective Guyer had no further contact with Simone after this text exchange. He did not formally open an investigation.

Over the course of Mortenson's contact with SPD, Detective Guyer also received information from at least two other witnesses, Hutchings and Ana Burk, corroborating Mortenson's account and reporting similar behavior. For the next two years, Detective Guyer stayed in contact with Hutchings and Burk.

In December 2020, Detective Guyer resumed an active investigation. He conducted recorded interviews with Mortenson and Hutchings, as well as two new witnesses, Angelica Campbell and Amanda Branch.

Civil Law Suit

In August 2021, Campbell and Branch initiated a complaint against Simone and a number of his associates in King County Superior Court, alleging a violation of the Washington Criminal Profiteering Act, chapter 9A.82 RCW, among various other causes of action. That December, Campbell and Branch amended their complaint, adding Mortenson, Megdalena Perez Hilts, and Nabila Haji-Ali as plaintiffs. In September 2022, the plaintiffs filed a third amended complaint, adding the City and SPD as defendants (collectively referred to as the City) and alleging negligence regarding the investigation and negligent supervision.

The plaintiffs' third amended complaint included declarations from Haji-Ali and Campbell, detailing the alleged escalation in Simone's abusive behavior and attributing it to Detective Guyer's contact with Simone. Haji-Ali's declaration stated that in August 2017, she reached out to Simone after a month and a half

4

of no contact. Initially, Simone engaged in his typical tactics, convincing Haji-Ali that he had changed and was interested in a relationship. The next month, however, after Simone's meeting with Detective Guyer, Simone's behavior shifted. He forced Haji-Ali to remain in a "sleeping pod" at one of the properties he owned and became violent, going so far as to pull her hair out and strangle her with enough force to pop several blood vessels in her eyes.

Campbell asserted that in early 2020, she flew to Seattle to be with Simone. Skipping his typical pretenses, Simone immediately began pressuring Campbell to perform sex acts in exchange for money. He forced her to live at one of his properties where she was not permitted to turn on the lights or heat. The building did not have bathing or cooking facilities, and Campbell was largely not permitted to leave. After Campbell began driving for Amazon Flex, Simone became dissatisfied with her earnings and again pressured her to engage in sex work. When she refused, he left her in a remote parking lot, thereby ending their relationship.

The City first moved to dismiss the third amended complaint for failure to state a claim upon which relief can be granted. The court denied the City's motion, ruling that the plaintiffs' allegations that the City's investigation aggravated Simone's actions constituted a claim not covered by the public duty doctrine because the plaintiffs alleged a misfeasance in the investigation.

The parties conducted discovery following the court's denial of the City's motion to dismiss. The City then moved for summary judgment requesting dismissal with prejudice, arguing that it did not have a duty to the plaintiffs and

there was insufficient evidence to support a showing of a breach of duty or causation of injury, essential elements of a negligence claim. In October 2023, the trial court granted the City's motion for summary judgment, finding that the plaintiffs failed to raise a genuine issue of material fact as to breach of a duty, that the public duty doctrine likely shielded the City from liability, and that the plaintiffs' claim was premised on negligent investigation, which is not actionable.

Plaintiffs appeal.

## ANALYSIS

We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Hicks v. Klickitat County Sheriff's Office, 23 Wn. App. 2d 236, 242, 515 P.3d 556 (2022), review denied, 200 Wn.2d 1024, 522 P.3d 49 (2023). A genuine issue of material fact exists if reasonable minds would differ on the factual issue controlling the outcome of the litigation. Hicks, 23 Wn.2d at 242-43. A moving party is entitled to summary judgment if, as a matter of law, there is no substantial evidence or reasonable inference supporting a verdict for the nonmoving party. Galassi v. Lowe's Home Ctrs., LLC., 27 Wn. App. 2d 593, 597, 534 P.3d 354 (2023). Substantial evidence exists " 'if it is sufficient to persuade a fair-minded, rational person of the truth of the declared premise.' " Johnson v. Liquor & Cannabis Bd., 197 Wn.2d 605, 611, 486 P.3d 125 (2021) (internal quotation marks omitted) (quoting Guijosa v. Wal-Mart Stores, Inc., 144 Wn.2d

907, 32 P.3d 250 (2001)).  We view all facts and reasonable inferences in the light most favorable to the nonmoving party.  Keck v. Collins, 184 Wn.2d 358, 368, 357 P.3d 1080 (2015).

Negligence

The plaintiffs assert that the trial court erred in granting the City's motion for summary judgment because there was sufficient evidence to create a genuine issue of material fact as to whether the City conducted an investigation into Simone at all.  The City disagrees, arguing that the plaintiffs raise this issue for the first time on appeal, that no dispute of material fact exists as to whether it actually conducted an investigation, and that the court did not err in finding that the plaintiffs' claims were for negligent investigation, for which there is no viable cause of action.

Generally, we do not consider issues raised for the first time on appeal.  RAP 2.5(a); State v. Kirkman, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).  While the plaintiffs concede that they did not raise this issue in their writings below, they contend that the essence of the argument was raised during oral argument for summary judgment.

As a preliminary matter, the plaintiff's argument at the trial court was based on the theory of negligent investigation, for which our Supreme Court has determined that police may not be separately liable.  Mancini v. City of Tacoma, 196 Wn.2d 864, 869, 479 P.3d 656 (2021).

In asserting they argued a lack of investigation below, the plaintiffs point to their statements that, "Detective [Guyer] said, well, I never really opened an investigation. He never took any investigative steps. He never opened a file."

But the context surrounding the statements do not support the plaintiffs' assertion. Namely, the plaintiffs continued on to state that "[w]e have presented evidence from which a reasonable jury could conclude that Detective [Guyer's] conduct in notifying Simone about the investigation and then functionally abandoning it resulted to a dramatic increase in the level of abuse towards these two plaintiffs." These statements were part of a larger discussion regarding the lack of a sufficient investigation, not the plaintiffs raising a new separate claim to the trial court that there was not an investigation at all. To the extent that a claim of lack of sufficient investigation is a claim different from negligent investigation, it is raised for the first time on appeal and we decline to reach it.[2]

The plaintiffs next contend that the question is not whether Detective Guyer's conduct was characterized as an investigation but whether there was evidence provided to the trial court of any negligence. They contend that they argued a specific act of negligence: Detective Guyer informing Simone that several women who had escaped his influence reported him to the police, which

---

[2] The plaintiffs' third amended complaint characterizes Detective Guyer's conduct as an investigation, stating: "[t]he breach was the direct and proximate cause of Plaintiffs' injuries because the negligent investigation of Defendant Simone allowed, and in fact emboldened, him to continue his criminal enterprise" and "[a]s a result of the negligent investigation by Defendant City of Seattle and SPD, Plaintiffs suffered physical, mental, emotional, and economic harm." The plaintiffs continued to frame Guyer's conduct as an investigation in their opposition to the City's motion for summary judgment.

placed the women in jeopardy of harmful retaliation by Simone. Because the plaintiffs do not provide evidence of negligence, we disagree.

In an action for negligence, a plaintiff must prove four basic elements: (1) the existence of a duty, (2) breach of that duty, (3) proximate cause, and (4) resulting injury. Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996).

It is well settled that in common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm through interactions with others. Mancini, 196 Wn.2d at 879. This duty applies in the context of law enforcement and encompasses the duty to refrain from directly causing harm to another through affirmative acts of misfeasance. Beltran-Serrano v. City of Tacoma, 193 Wn.2d 537, 550, 442 P.3d 608 (2019).

Given that Detective Guyer acted in his role as a law enforcement officer, the City owed the plaintiffs a duty of reasonable care to refrain from causing harm through affirmative acts of misfeasance.

The common law duty to exercise reasonable care is breached when a defendant fails to exercise ordinary care or fails to exercise as much care as a reasonably prudent person would exercise under the same or similar circumstances. Estate of Templeton v. Daffern, 98 Wn. App. 677, 682, 990 P.2d 968 (2000). Law enforcement officers generally have significant discretion in deciding how, when, and against whom to enforce the law. Matter of Recall of Snaza, 197 Wn.2d 104, 113, 480 P.3d 404 (2021).

9

The plaintiffs contend that the City breached its duty of care when Detective Guyer revealed to Simone that two women had reported him to police without taking any other investigative steps. The City maintains that the plaintiffs failed to present evidence showing that Detective Guyer's conduct in speaking with Simone breached any standard of care, as speaking with suspects is part of routine information gathering and investigation practices.[3] Because law enforcement officers have significant discretion in how they engage in investigations and interviewing suspects is a regular part of that process, the plaintiffs failed to establish a breach of duty.

The plaintiffs rely on Robb v. City of Seattle to support the proposition that Detective Guyer is negligent because his affirmative act created a recognizable high degree of risk of harm. 176 Wn.2d 427, 433, 295 P.3d 212 (2013).

In Robb, a motorist was shot and killed after the shooter returned to collect shotgun shells from his previous Terry[4] stop. 176 Wn.2d at 429. The motorist's estate asserted negligence against the city and law enforcement for failing to remove the shells. Robb, 176 Wn.2d at 429. Our Supreme Court held that law enforcement was not negligent because the failure to remove the shells was an act of nonfeasance. Robb, 176 Wn.2d at 430. However, the plaintiffs in this case assert that had law enforcement taken affirmative action, such as picking up

---

[3] See e.g., State v. Harris, No. 48618-1, slip op. at 4 (Wash. Ct. App. Dec. 27, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048618-1-II%20Unpublished%20Opinion.pdf (police officer found and spoke with a suspect in a domestic violence case).

[4] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

the shell and neglecting to remove it from the scene, Restatement §302B comment e would impose liability. Restatement §302B comment e states: "[t]here are, however, situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of other… [such as] where the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account."

The scenario the plaintiffs analogize to in Robb, where the officer picks up the shell and negligently fails to remove it, is distinguishable from this case. In Robb, there was a clear causal link between the officers' failure to remove the shotgun shells from the scene and the motorist's death. Therefore, had the officers taken affirmative action, the Restatement would likely have imposed liability. Here, in contrast, the plaintiffs have failed to show that Detective Guyer's affirmative act in speaking with Simone created a recognizable high degree of risk of harm to Haji-Ali and Campbell.

Proximate cause has two prongs: cause in fact and legal causation. Little v. Countrywood Homes, Inc., 132 Wn. App. 777, 780, 133 P.3d 944 (2006). Both are necessary to support a finding of causation. Little, 132 Wn. App.at 780. To establish cause in fact, the claimant must show "that the harm [they] suffered would not have occurred but for an act or omission of the defendant." Little, 132 Wn. App.at 780. Legal causation is then " 'grounded in policy determinations as to how far the consequences of a defendant's acts should extend' " and evaluated based on " 'mixed considerations of logic, common sense, justice,

11

policy, and precedent.' " Lowman v. Wilbur, 178 Wn.2d 165, 169, 309 P.3d 387 (2013) (internal quotation marks omitted) (quoting Crowe v. Gaston, 134 Wn.2d 509, 518, 951 P.2d 1118 (1998); Hartley v. State, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)).

The plaintiffs rely on the declarations of Haji-Ali and Campbell to show a causal relationship between Detective Guyer's conduct and the alleged escalation in Simone's abuse. The plaintiffs have failed, however, to present evidence showing that, but for Detective Guyer's interview with Simone, Campbell and Haji-Ali would not have suffered an escalation in abuse.

With regard to Campbell, almost two years passed after Detective Guyer and Simone's meeting before Simone allegedly began abusing Campbell. Any resulting showing of causation between Detective Guyer's conduct and Campbell's alleged victimization is too attenuated to support negligence.

Similarly, the plaintiffs have not shown that the alleged escalation in abuse that may have occurred toward Haji-Ali was the result of Detective Guyer's meeting with Simone rather than Simone's response to increase control of Haji-Ali after she attempted to leave him. Less than a month before the aforementioned interview and shortly before the assertion of an escalation in Simone's abuse, Haji-Ali contacted Simone after a month and a half of having no contact. Also, allegations exist that Simone previously physically abused women in a manner that did not indicate a desire to hide physical marks, which is the crux of the plaintiffs' argument with regard to Haji-Ali. In 2012, Branch asserted that Simone gave her black eyes, "savagely beat [her] about the head, face, and

12

torso with closed fists," and "slapped her every single time they had sex, leaving marks on her face and body." Given the allegations of Simone's history of violence with other women and the potential intervening cause of Haji-Ali cutting off and then subsequently reestablishing contact with Simone, the plaintiffs fail to show proximate cause.

Because no cause of action recognized in Washington State for negligent investigation and no genuine issues of material fact concerning breach of duty and proximate cause for the negligence claim exist, we conclude that the trial court did not err in granting summary judgment.

We affirm.

_Smith, C.J._

WE CONCUR:

_Brumm, J_   _Haji, ACJ_